UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

CASE NO.

Thadeus Avvampato,

    Plaintiff,

v.

International Keg Rental, LLC,

    Defendant.

_____/

**COMPLAINT**

Plaintiff, Thadeus Avvampato, by and through his undersigned attorney, files this Complaint against Defendant, International Keg Rental, LLC, stating as follows:

**PARTIES, VENUE, AND JURISDICTION**

1. This is an action to recover damages under Florida contract law, including breach of contract and unpaid wages, and the Fair Labor Standards Act.

2. Plaintiff is seeking damages in excess of $75,000.

3. Plaintiff, Thadeus Avvampato, is a citizen of the United States living in the state of Florida.

4. Defendant, International Keg Rental, LLC ("International Keg"), is a Delaware limited liability company operating out of San Francisco, California via its parent company, White Oak Global Advisors LLC.

5. Defendant is not registered to do business in Florida with the Florida Secretary of State. Defendant's company website proclaims Orlando, FL to be its "Global Headquarters" but

a quick google search of the given address, 10450 Turkey Lake Rd. Suite 691329, Orlando, FL 32819, reveals this to be a post office.

6. This court has jurisdiction subject to 28 U.S.C. §1332(a) diversity of citizenship.

7. Jurisdiction is also conferred on this Court by Title 28 U.S.C. § 1337 and by Title 29 U.S.C. § 216(b). Defendant is and, at all times pertinent to this Complaint, was engaged in interstate commerce. Defendant operated as an organization which sells and/or markets its services and/or goods to customers from throughout the United States and also provides its services for goods sold and transported from across state lines of other states.  Defendant obtains and solicits funds from non-Florida sources, accepts funds from non-Florida sources, uses telephonic transmissions going over state lines to do its business, transmits funds outside the State of Florida, and otherwise regularly engages in interstate commerce, particularly with respect to their employees.  Upon information and belief, the annual gross revenue of Defendant was at all times material hereto in excess of $500,000 per annum, and/or Plaintiff, by virtue of working in interstate commerce, otherwise satisfies the Fair Labor Standards Act's requirements.

8. Defendant is and was, during all times hereafter mentioned, an enterprise engaged in commerce or in the production of goods for commerce as defined in §§3(r) and 3(s) of the Act, 29 U.S.C. § 203(r) and 203(s) and/or Plaintiff was engaged in interstate commerce for the Defendant.  Defendant's business activities involve those to which the Act applies. Defendant is a keg rental company and, through its business activity, affects interstate commerce. The Plaintiff's work for Defendant likewise affects interstate commerce.

## GENERAL ALLEGATIONS

9. Mr. Avvampato previously worked for a company called Global Keg.  In 2020, Global Keg filed for bankruptcy protection.  Global Keg's assets were eventually acquired by

International Keg, which had been formed for that purpose. Since International Keg was beginning a new company with the foundation of Global Keg, Mr. Avvampato was hired to help launch the business.

10. On or about October 2020, Mr. Avvampato and International Keg came to an agreement that placed Mr. Avvampato as President of International Keg at a salary of $250,000.00 per year.

11. Also, as an executive in a C-Suite position, Mr. Avvampato was entitled to receive 20 PTO days (160 hours) per year plus rollover of at most 200 hours from the previous year. Any remaining PTO at the time of separation of employment is to be paid according to company policy.[1]

12. On or about December 8, 2020 the Parties entered into a contract ("Contract"). The terms and existence of the Contract are considered confidential.[2]

13. Under the Contract, Mr. Avvampato is entitled to receive compensation.

14. On or about December 1, 2021, Mr. Avvampato had a conversation with Thomas Finnigan IV, a managing member of White Oak Global Advisors, LLC. In this conversation, Mr. Finnigan let Mr. Avvampato know that the company would be going in a different direction and his services would not be retained. It was clear from the conversation that Mr. Avvampato was not being terminated for cause.

15. Mr. Avvampato then asked about the Contract. Mr. Finnegan then changed tone and declared that Mr. Avvampato was being terminated for cause (though no specifics were given) and that the Contract would not be honored. Mr. Finnegan's version of events was

---

[1] Exhibit 1 – International Keg Rental PTO Policy for C-Suite Executives 15 October 2020
[2] Because of this, the contract will be submitted for in camera review at a later date.

memorialized in a letter dated December 3, 2021[3] which also did not elaborate on the circumstances that lead to his declared "for cause" termination.

16. Though no "for cause" explanation was ever given by Defendant, Mr. Avvampato has never:

    a. Committed a misdemeanor or felony;

    b. Committed any theft, fraud, or breach of fiduciary duty;

    c. Engaged in any sexual harassment or any other misconduct;

    d. Refused or failed to perform any duties; or

    e. Breached the agreement.

17. Mr. Avvampato has complied with all terms required to satisfy the Contract.

18. Upon his termination, Mr. Avvampato had approximately 170.79 PTO hours remaining. At a rate of $120.19 per hour, this comes to $20,527.64 in unpaid PTO. According to company policy, this money is to be paid upon termination.

19. As of this filing, no outstanding PTO has been paid to Mr. Avvampato.

20. Mr. Avvampato received one pay check per month at the end of each month. His last day of employment with Defendant was on December 1, 2021. However, his last paycheck from the company was sent on November 30, 2021 for the period of November 1, 2021 through November 30, 2021.

21. Mr. Avvampato worked December 1, 2021 and is supposed to have been paid for this work. This is acknowledged by Defendant in Exhibit 2.

22. As of this filing, no payment for work performed on December 1 has been paid to Mr. Avvampato despite several requests.

---

[3] Exhibit 2 – Termination letter

23. Since Defendant's pay period ended on November 30 and another one began on December 1, 2021 and Plaintiff worked but was not paid during this pay period, Plaintiff is owed his minimum wage for the period.

24. Minimum Wage in Florida on December 1, 2021 was $10 per hour.

25. By paying Plaintiff $0.00 for his work on December 1, 2021, Defendant has failed to pay Plaintiff his owed minimum wage.

26. Plaintiff was forced to hire the undersigned attorney due to this dispute.

## COUNT I: BREACH OF CONTRACT
### (The Contract)

27. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 26 above as if set out in full herein.

28. Plaintiff entered into a written contract with Defendant, the Contract.

29. The terms of the contract have been satisfied.

30. Under the contract, Plaintiff is owed compensation.

31. As of this filing, Defendant has failed to comply with the contract.

32. Defendant has breached the Contract.

## COUNT II: BREACH OF CONTRACT
### (Unpaid PTO)

33. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 26 above as if set out in full herein.

34. Upon his hiring, Plaintiff was subject to many company policies for which both he and the company needed to adhere. By agreeing to work for Defendant, Plaintiff had entered into a contract to be subject to these company policies. This created a contractual relationship between Plaintiff and Defendant in terms of how Plaintiff was to be paid.

35. According to company policy, Plaintiff was able to accrue PTO to be used when necessary. This PTO was allowed to be rolled over year to year. Further, upon employment separation, any of Plaintiff's unused PTO is to be paid to Plaintiff.

36. At the time of his termination, Plaintiff had accrued 170.79 PTO hours. At a rate of $120.19 per hour, this comes to $20,527.64 in unpaid PTO.

37. Under company policy and his contract for employment, Plaintiff is entitled to any and all unpaid PTO.

38. As of this filing, Defendant has failed to comply with the contract.

39. Defendant has breached its contract with Plaintiff.

40. Plaintiff has been damaged.

41. Under Florida Statutes 448.08, attorney's fees are owed to successful litigants in actions for unpaid wages.

42. Florida law and precedent considers accrued PTO to be wages subject to Florida Statute 448.08.

43. Plaintiff is owed attorney's fees for his unpaid PTO.

## COUNT III:  BREACH OF CONTRACT
### (Unpaid Wages)

44. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 26 above as if set out in full herein.

45. Upon his hiring, Plaintiff and Defendant entered into an agreement for Plaintiff to be paid a wage of $250,000 per year. This comes to approximately $961.54 per day considering 52 weeks of work and 5 days of work per week.

46. By agreeing to provide a wage in exchange for service, Plaintiff and Defendant have entered into a contract for employment.

47. Plaintiff was terminated on December 1, 2021

48. Plaintiff performed services for Defendant on December 1, 2021.

49. Defendant failed to pay Plaintiff for services performed on December 1, 2021.

50. Plaintiff's final pay check from Defendant was for the period ending November 30, 2021.

51. Plaintiff is owed $961.54 for his owed but unpaid wages for December 1, 2021.

52. As of this filing, Defendant has failed to comply with the contract.

53. Defendant has breached its contract with Plaintiff.

54. Plaintiff has been damaged.

55. Under Florida Statutes 448.08, attorney's fees are owed to successful litigants in actions for unpaid wages.

56. Florida law and precedent obviously considers unpaid wages to be wages subject to Florida Statute 448.08.

57. Plaintiff is owed attorney's fees for his unpaid wages.

## COUNT IV
## VIOLATION OF 29 U.S.C. § 206 (FAILURE TO PAY MINIMUM WAGE)

58. Plaintiff re-adopts each and every factual allegation as stated in paragraphs 1 through 26 above as if set out in full herein.

59. Under 29 U.S.C. §206, Defendant is required to pay a minimum wage to its employees.

60. On December 1, 2021 Plaintiff was not compensated at the required minimum wage for the state of Florida.

61. During the applicable portion of 2021, the minimum wage for the state of Florida was $10.00 per hour.

62. During this period, Plaintiff worked approximately 8 hours and was not paid for this work.

63. This comes to an hourly rate of $0.00 for the week. This is $10 below the minimum wage for each hour worked.

64. Plaintiff was paid below minimum wage. This amount is owed to Plaintiff plus an additional equal amount in liquidated damages and attorney's fees

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests this Court grant the following relief:

A. An award to Plaintiff for actual damages owed under the Contract with interest;

B. In the alternative, an Order of Judgment declaring that Plaintiff was terminated without cause with compensation to be paid under the Contract;

C. An award to Plaintiff for actual damages in the amount of $20,527.64 for his owed PTO with interest;

D. An award to Plaintiff for actual damages in the amount of $961.54 for his owed but unpaid wages for work performed on December 1, 2021 with interest;

E. Declaring that Defendant violated the minimum wage provisions of 29 U.S.C. §206;

F. Awarding Plaintiffs minimum wage compensation;

G. Awarding Plaintiffs liquidated damages;

H. An award of costs of this action together with reasonable attorneys' fees for all unpaid wages;

I. Such other and further relief as this Court deems equitable and just.

## JURY TRIAL DEMAND

Plaintiffs demand a trial by jury of all issues so triable as of right.

Dated: February 9, 2022.

Respectfully submitted,

By: /s/ R. Edward Rosenberg
R. Edward Rosenberg, Esquire
Fla. Bar No.: 88231
Email: rer@sorondorosenberg.com
Sorondo Rosenberg Legal PA
1825 Ponce de Leon Blvd. #329
Coral Gables, FL 33134
786.708.7550

Attorney for Plaintiff